# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE EATON VANCE CORPORATION SECURITIES LITIGATION | No. 01 CV 10911 EFH |

## STIPULATION OF SETTLEMENT

Subject to the approval of the Court and pursuant to Rule 23 of the Federal Rules of Civil Procedure, this Stipulation of Settlement (the "Stipulation" or "Settlement Agreement") is entered into among Lead Plaintiffs Donald Chesner, Elizabeth Chesner, the Sophie B. Bialeck Trust, and Woodson W. Bassett, Jr., on behalf of themselves and the certified Class defined herein, and Plaintiff Neil Macy, and Defendants Eaton Vance Corp., EV Classic Senior Floating-Rate Fund, Eaton Vance Prime Rate Reserves, Eaton Vance Management, James B. Hawkes, James L. O'Connor, Scott H. Page, Payson F. Swaffield, and M. Dozier Gardner (the "Eaton Vance Defendants") and Defendants Jessica M. Bibliowicz, Donald R. Dwight, Samuel L. Hayes, Norton H. Reamer, Lynn A. Stout, John L. Thorndike, and Jack L. Treynor (the "Independent Trustee Defendants") (collectively, the "Defendants") by and through their respective, duly authorized counsel. This Stipulation is intended by both Plaintiffs and Defendants to fully and finally compromise, resolve, discharge and settle the Released Claims, as defined herein, and dismiss this Action with prejudice, subject to the terms and conditions set forth below and without any admission or concession as to the merits of any claim or defense by any Plaintiff or Defendant.

**WHEREAS:**

**Procedural History**

A.      This securities class action was commenced on May 25, 2001, alleging violations of the federal securities laws on behalf of certain investors in the EV Classic Senior Floating-Rate Fund ("EV Classic").

B.      By Order dated August 14, 2001, pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), the Court appointed Donald Chesner, Elizabeth Chesner, the Sophie B. Bialeck Trust, and Woodson W. Bassett, Jr. as Lead Plaintiffs (collectively, "Lead Plaintiffs"), and approved their selection of the predecessor-in-interest of Labaton Sucharow & Rudoff LLP, the prior firm of one of the principals of Klafter & Olsen LLP, and a predecessor-in-interest of Lerach Coughlin Stoia Geller Rudman & Robbins LLP as Lead Counsel in the Action.

C.      Lead Plaintiffs, and an additional Plaintiff, Neil Macy ("Macy") (collectively, "Plaintiffs"), filed their Consolidated Complaint on October 15, 2001 (the "Complaint"), which alleged, among other things, that the Defendants and an affiliated entity, Boston Management and Research ("BMR"), misvalued certain senior loans in a common portfolio of loans (the "Senior Debt Portfolio") on behalf of EV Classic as well as three other proprietary Eaton Vance mutual funds, namely Eaton Vance Prime Rate Reserves ("Prime Rate"), Eaton Vance Institutional Senior Floating-Rate Fund ("Institutional"), and Eaton Vance Advisers Senior Floating-Rate Fund ("Advisers"), in violation of rules of the Securities and Exchange Commission (the "SEC"), and issued registration statements and prospectuses for EV Classic and these three other funds which contained false and misleading statements about the Net Asset Value of EV Classic and these three other funds.

D.      Plaintiffs asserted in the Complaint that in connection with this alleged wrongdoing, Defendants violated Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 (the

"Securities Act") and Sections 10(b) (and Rule 10b-5 promulgated thereunder) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and caused damages to Plaintiffs and the members of the class they sought to represent.  By their Complaint, Plaintiffs sought money damages plus interest, costs, and attorneys' fees from Defendants.

E.     On November 30, 2001, Defendants and BMR filed motions to dismiss the Complaint, which motions were opposed by Plaintiffs.  By a Memorandum and Order dated June 11, 2002, the Court granted in part and denied in part Defendants' motions to dismiss.  The Court upheld Plaintiffs' Securities Act claims and dismissed the Exchange Act claims, including any and all claims against BMR.  Defendants sought reconsideration of the Memorandum and Order, which motion was denied by the Court on July 31, 2002.  Defendants answered the Complaint on August 12, 2002, denying the material allegations of the Complaint and asserting a number of affirmative defenses.

F.     Lead Plaintiffs, all of whom purchased shares of EV Classic during the Class Period, and Macy, who purchased shares of Prime Rate during the Class Period, then moved for class certification pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of all persons and entities that purchased shares (including purchases by dividend reinvestment) of EV Classic, Prime Rate, Institutional or Advisers between May 25, 1998 and March 5, 2001.  By a Memorandum and Order dated December 16, 2003, the Court granted class certification in part, certifying a class of only EV Classic investors, and only those who purchased shares of EV Classic between May 25, 1998 and March 15, 1999, inclusive, or between March 13, 2000 and March 2, 2001, inclusive, and only appointing the Lead Plaintiffs to represent the Class.  By this Memorandum and Order, the Court also granted Plaintiffs'

request that the class claims asserted under Section 12(a)(2) of the Securities Act be voluntarily dismissed.

G.     Plaintiffs then filed a petition with the United States Court of Appeals for the First Circuit (the "Court of Appeals"), pursuant to Rule 23(f) of the Federal Rules of Civil Procedure, seeking leave to take an immediate appeal of the December 16, 2003 class certification ruling. After seeking certain additional explanations from the Court, the Court of Appeals denied the petition on May 10, 2004.

H.     Pursuant to a further order of the Court dated September 14, 2004, commencing on October 29, 2004, a Notice of Pendency of this action was mailed to all members of the Class who could be identified through reasonable effort.

### Discovery, Summary Judgment, and Settlement Discussions

I.     Lead Counsel engaged in a thorough investigation and completed extensive fact and expert discovery in this action. This discovery and investigation included: (a) review and analysis of more than 85,000 pages of documents produced by Defendants and various third parties; (b) review and analysis of hundreds of electronic datafiles produced on approximately a dozen computer-readable disks produced by Defendants and third-party pricing services; (c) review and analysis of registration statements and other documents filed by Defendants with the SEC; (d) consultation throughout the pendency of the litigation with liability and damages experts retained by Lead Counsel, who submitted several reports and provided deposition testimony; (e) depositions of sixteen (16) fact witnesses, including the Plaintiffs, many of the Defendants, their officers or employees, and a third party witness with information relevant to the litigation; and (f) exchange of several expert reports with Defendants and depositions of both Plaintiffs' and Defendants' liability and damages experts. Fact discovery concluded in January 2004, and expert discovery concluded in November 2004.

J.      Following the completion of discovery, on January 18, 2005, the Eaton Vance Defendants and the Independent Trustee Defendants filed motions for summary judgment, which Plaintiffs opposed.  On June 8, 2005, Judge Harrington issued orders denying both motions in their entirety.  The Court also issued an order setting deadlines for the filing of various pre-trial submissions and motions, and set a trial date of November 28, 2005.  On June 23, 2005, certain Defendants moved for reconsideration of the order denying their motion for summary judgment. The Court promptly denied reconsideration.

K.      As the parties were preparing for the November 28, 2005 trial of this Action, they agreed to attempt to mediate a settlement of this action before Magistrate Judge Marianne B. Bowler of this Court.  Pursuant to an order of this Court dated August 30, 2005, and an order of Magistrate Judge Bowler dated August 31, 2005, Plaintiffs and Defendants submitted confidential mediation statements.  The mediation was held on September 20, 2005.  Lead Counsel and Defendants' Counsel each made presentations to Magistrate Judge Bowler, and actively participated in an all-day mediation session.  Through the critical assistance of Magistrate Judge Bowler, the Parties reached an agreement-in-principle to settle this Action for the consideration set forth herein, subject to the negotiation of a definitive stipulation of settlement and releases in forms satisfactory to counsel for all Parties.

L.      Based upon their discovery, investigation, and evaluation of the facts and law relating to the claims alleged in the Complaint, Plaintiffs and Lead Counsel (who have extensive experience in securities class action litigation) have agreed to settle this Action pursuant to the terms and conditions of this Settlement Agreement after considering, among other things, (i) the substantial cash benefits to Class Members of this Settlement; (ii) the uncertainty of being able to prove the allegations in the Complaint; (iii) the attendant risks of litigation, especially in

complex actions such as this, as well as the difficulties and delays inherent in such litigation (including any appeals); (iv) the uncertainty, even if Lead Plaintiffs were to establish liability at trial, inherent to the various and competing theories of damages under the Securities Act, including theories of "negative causation"; (v) their awareness of Defendants' likely positions on the various liability and damages issues; (vi) the risks in successfully obtaining a reversal of the Court's decision on class certification by the Court of Appeals, which pursuant to the prior order of the Court of Appeals denying Plaintiffs' Rule 23(f) petition, can only be appealed after the conclusion of a trial in this Action; (vii) the desirability of consummating this Settlement Agreement in order to provide certain and effective relief to Class Members after more than four years of litigation; and (viii) their belief that the Settlement is fair, reasonable, and adequate, and in the best interests of all Class Members.

M.     Defendants have denied and expressly continue to deny any wrongdoing, fault, liability, violation of law or damage alleged in the Complaint and do not admit or concede any wrongdoing, fault, liability, violation of law or damage in connection with any facts or claims that have been or could have been alleged against them by the Plaintiffs, but consider it desirable for the Action to be settled and dismissed because the proposed Settlement will (i) bring to an end the substantial expenses, burdens, risks, and uncertainties associated with continued litigation of this Action; (ii) finally put to rest those claims and the underlying matters; and (iii) avoid further expense and disruption of the management and operation of Defendants' business due to the prosecution and defense of this Action.

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED**, among Lead Plaintiffs, on behalf of themselves and each of the other Class Members, and Plaintiff Macy, by and through their duly authorized counsel, and Defendants, by and through their duly authorized

counsel, that subject to the approval of the Court, this Action hereby will be settled, compromised, and dismissed on the merits and with prejudice on the terms and conditions set forth in this Stipulation of Settlement dated December 20, 2005.

**1      DEFINITIONS**

As used in this Stipulation and the exhibits annexed hereto, the following terms have the following meanings unless a section or subsection of this Stipulation or an exhibit otherwise provides:

1.1         "Action" means the consolidated action titled In re Eaton Vance Corporation Securities Litigation, No. 01 CV 10911 EFH (D. Mass.).

1.2         "Advisers" means Eaton Vance Advisers Senior Floating-Rate Fund.

1.3         "Authorized Claimant" means a Class Member (or the representative of such Class Member including, without limitation, agents, administrators, executors, heirs, successors, and assigns), who timely returns a valid and signed Claim Information Form to the Claims Administrator and who is entitled to a distribution from the Settlement Fund pursuant to the terms and conditions set forth in this Stipulation or the Plan of Allocation.

1.4         "Claim Information Form" means the form, prepared by the Claims Administrator using data and information provided by Defendants concerning Class Members' transactions in shares of EV Classic during the Class Period, which will be mailed to Class Members with the Notice and pursuant to which Class Members will submit a claim by signing, dating, and returning it to the Claims Administrator in accordance with the procedures set forth therein.  A sample Claim Information Form proposed by Lead Plaintiffs is annexed hereto as Exhibit 2 to Exhibit A.

1.5       "Claims Administrator" means, subject to Court approval, Complete Claims Solutions, Inc. or such other or subsequent entity that the Court shall appoint to administer the Settlement and to perform other administrative functions under this Settlement Agreement.

1.6       "Class" or "Class Members" means all Persons who purchased shares (including purchases by dividend reinvestment) of EV Classic between May 25, 1998 and March 15, 1999, inclusive, or between March 13, 2000 and March 2, 2001, inclusive.  Excluded from the Class are (i) the Defendants herein, the officers, directors, and employees of each corporate Defendant, the members of each individual Defendant's immediate family, any entity in which any Defendant has a controlling interest, and the legal affiliates, representatives, heirs, controlling persons, successors, and predecessors in interest or assigns of any such excluded party; and (ii) those Persons who submitted valid and timely requests for exclusion from the Class pursuant to the instructions set forth in the Notice of Pendency and did not submit timely revocations of such requests for exclusion in accordance with the procedures set forth in the Special Notice and in Section 6.3 of this Stipulation.

1.7       "Class Period" means the period of time between May 25, 1998 and March 15, 1999, inclusive, and between March 13, 2000 and March 2, 2001, inclusive.

1.8       "Complaint" means the Consolidated Complaint filed in this Action on October 15, 2001.

1.9       "Court" means the United States District Court for the District of Massachusetts.

1.10      "Court of Appeals" means the United States Court of Appeals for the First Circuit.

1.11    "Defendants" means Eaton Vance Corp., EV Classic Senior Floating-Rate Fund, Eaton Vance Prime Rate Reserves, Eaton Vance Management, James B. Hawkes, James L. O'Connor, Scott H. Page, Payson F. Swaffield, M. Dozier Gardner, Jessica M. Bibliowicz, Donald R. Dwight, Samuel L. Hayes, Norton H. Reamer, Lynn A. Stout, John L. Thorndike, and Jack L. Treynor.

1.12    "Defendants' Counsel" means the law firms of Kirkpatrick & Lockhart Nicholson Graham LLP and Goodwin Procter LLP.

1.13    "Escrow Account" means the interest-bearing escrow account in which the Settlement Fund will be deposited.

1.14    "Escrow Agent" means Citibank, N.A. or its successor.

1.15    "EV Classic" means Defendant EV Classic Senior Floating-Rate Fund.

1.16    "Exchange Act" means the Securities Exchange Act of 1934.

1.17    "Execution Date" means the date on which this Settlement Agreement has been executed by all Parties.

1.18    "Fairness Hearing" means the hearing at or after which the Court will make a final decision whether to approve this Settlement Agreement as fair, reasonable, and adequate pursuant to Rule 23 of the Federal Rules of Civil Procedure, whether the proposed Plan of Allocation should be approved, and whether the application of Lead Counsel for a Fee and Expense Award on behalf of Plaintiffs' Counsel should be granted.

1.19    "Fee and Expense Award" means such amounts as may be awarded by the Court to Lead Counsel to compensate Plaintiffs' Counsel for their fees and expenses in connection with the Action, which may include some or all of the following: (i) an award of attorneys' fees; (ii) reimbursement of expenses incurred in connection with prosecuting the

Action, including, without limitation, expenses attributable to experts and/or consultants retained by Lead Counsel; (iii) interest on such attorneys' fees and expenses at the same rate and for the same periods as earned by the Settlement Fund (until paid); and (iv) any reimbursement of costs to any Lead Plaintiff pursuant to 15 U.S.C. § 77z-1(a)(4).

1.20    "Final Judgment" means the Final Judgment and Order of Dismissal with Prejudice to be entered by the Court approving the Settlement, substantially in the form attached hereto as Exhibit B.

1.21    "Final Settlement Date" means the date on which the Final Judgment, in substantially the form set forth in Exhibit B annexed hereto, becomes final.  For purposes of this definition, the Final Judgment shall become final: (i) if no appeal is taken therefrom by any Person as to the Final Judgment, or any order or ruling merged into the Final Judgment, including, but not limited to, the Court's class certification decisions, on or before the date on which the time to appeal from the Final Judgment has expired pursuant to Rule 4(a) of the Federal Rules of Appellate Procedure; or (ii) if any appeal is taken, within the time specified in Rule 4(a) of the Federal Rules of Appellate Procedure, by any Person from the Final Judgment or any order or ruling merged into the Final Judgment, including, but not limited to, the Court's class certification decisions, on the date on which all appeals therefrom, including any petitions for rehearing or reargument, petitions for rehearing en banc, and petitions for certiorari or any other form or review, have been finally dismissed, have expired or have been disposed of in a manner resulting in a final affirmance of the Final Judgment and any orders or rulings merged into the Final Judgment.

1.22    "Institutional" means Eaton Vance Institutional Senior Floating-Rate Fund.

1.23        "Lead Counsel" means the law firms of Labaton Sucharow & Rudoff LLP, Klafter & Olsen LLP, and Lerach Coughlin Stoia Geller Rudman & Robbins LLP.

1.24        "Lead Plaintiffs" means Donald Chesner, Elizabeth Chesner, the Sophie B. Bialeck Trust, and Woodson W. Bassett, Jr., both in their individual capacities and in their capacities as representatives of the Class, and any of their heirs, executors, administrators, successors or assigns.

1.25        "Macy" means Plaintiff Neil Macy and any of his heirs, executors, administrators, successors or assigns.

1.26        "Net Settlement Fund" means the Settlement Fund, including any income earned therefrom, less (i) any Fee and Expense Award; (ii) any Notice and Administration Expenses in excess of two hundred thousand dollars ($200,000.00); and (iii) any Taxes and Tax Expenses payable from the Settlement Fund.

1.27        "Notice" means the notice of the proposed Settlement and Fairness Hearing, which is to be mailed to Class Members, pursuant to the Preliminary Approval Order, substantially in the form attached hereto as Exhibit 1 to Exhibit A.

1.28        "Notice and Administration Expenses" means all costs associated with the administration of the Settlement, including, without limitation, the costs associated with preparing, printing and mailing the Notice to Class Members, publishing the Summary Notice, preparing and processing Claim Information Forms, and distributing the Net Settlement Fund; provided, however, that Notice and Administration Expenses shall not include any of the Fee and Expense Award.

1.29        "Notice of Pendency" means the Notice of Pendency of Class Action mailed to Class Members beginning on October 29, 2004.

1.30     "Parties" means the Plaintiffs and the Defendants.

1.31     "Person" means a natural person, individual, corporation, partnership, limited partnership, association, joint venture, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity and their/its heirs, executors, administrators, predecessors, successors, representatives, or assignees.

1.32     "Plan of Allocation" means the terms and procedures for allocating the Net Settlement Fund among, and distributing the Net Settlement Fund to, Authorized Claimants as proposed by Lead Counsel and set forth in the Notice, or such other Plan of Allocation as the Court shall approve.

1.33     "Plaintiffs" means the Lead Plaintiffs and Plaintiff Macy.

1.34     "Plaintiffs' Counsel" means Lead Counsel and all other counsel of record for Plaintiffs in this Action.

1.35     "Preliminary Approval Order" means the Order to be entered by the Court preliminarily approving the Settlement and providing for notice, as contemplated in Section 4.1 of this Settlement Agreement.   A copy of the Preliminary Approval Order proposed by the Parties is annexed hereto as Exhibit A.

1.36     "Prime Rate" means Defendant Eaton Vance Prime Rate Reserves.

1.37     "PSLRA" means the Private Securities Litigation Reform Act of 1995.

1.38     "Qualified Settlement Fund" means a fund within the meaning of Treasury Regulations § 1.468B-1.

1.39     "Released Claims" shall collectively mean any and all claims (including Unknown Claims (as defined in paragraph 1.49 below), debts, suits, demands, liabilities, rights

and causes of action, however denominated and of every nature and description whatsoever without limitation, whether known or unknown, which have been or could have been asserted in this Action by Plaintiffs or any Class Member against any of the Defendants or the Released Persons, whether under or based on state, federal, common, foreign, local, statutory or administrative law or any other law, rule or regulation, whether fixed or contingent, accrued or unaccrued, liquidated or unliquidated, at law or in equity, matured or unmatured, whether class, derivative, direct, representative or individual in nature, including, without limitation, claims for negligence, gross negligence, breach of duty of care and/or breach of duty of loyalty, fraud, breach of fiduciary duty, and violations of any state or federal statutes, rules or regulations arising out of, relating to, or in connection with the purchase of shares in EV Classic by any Plaintiff or Class Member during the Class Period, including, but not limited to, any claim arising out of or relating to any of the acts, disclosures, statements, omissions, misrepresentations, facts, events, matters, transactions, occurrences or failures to act that were alleged in or referred to in the Action or that could have been alleged, asserted or contended in the Action.

    1.40        "Released Persons" means any and all of the Defendants, their respective present and former parents, subsidiaries, divisions, and affiliates, the present and former employees, officers, and directors of each of them, the present and former trustees, attorneys, accountants, insurers, partners, principals, and agents of each of them, and the predecessors, heirs, executors, administrators, successors, and assigns of each of them, and any person or entity which is or was related to or affiliated with any Released Person or in which any Released Person has or had a controlling interest and the present and former employees, officers, directors, attorneys, accountants, insurers, partners, principals, and agents of each of them.

1.41        "SEC" means the United States Securities and Exchange Commission.

1.42        "Securities Act" means the Securities Act of 1933.

1.43        "Settlement" means the agreement between and among the Parties to settle, compromise and dismiss this Action with prejudice and on the merits, under the terms, conditions, and provisions set forth in this Settlement Agreement.

1.44        "Settlement Fund" means the fund described in Section 2.1 of this Settlement Agreement.

1.45        "Special Notice" means the Special Notice to Class Members who Previously Requested to be Excluded from the Class and the Form of Request for Revocation of Exclusion, substantially in the form attached hereto as Exhibit 4 to Exhibit A, which pursuant to the Preliminary Approval Order is to be mailed, along with the Notice, to Class Members who previously submitted timely, valid written requests for exclusion in response to the Notice of Pendency.

1.46        "Stipulation" or "Settlement Agreement" means this Stipulation of Settlement and its accompanying exhibits, including any subsequent amendments thereto and any exhibits to such amendments.

1.47        "Summary Notice" means the notice of the proposed Settlement and Fairness Hearing, which is to be published, pursuant to the Preliminary Approval Order, substantially in the form attached hereto as Exhibit 3 to Exhibit A.

1.48        "Taxes and Tax Expenses" means (i) all taxes (including any estimated taxes, interest or penalties) on the income of the Settlement Fund; and (ii) expenses and costs incurred in connection with the operation and implementation of Section 3.7 of this Settlement Agreement and the taxation of the Settlement Fund, including, without limitation, expenses of

tax attorneys and/or accountants related to filing (or failing to file) the returns described in Section 3.7.

1.49        "Unknown Claims" means any and all Released Claims that the Plaintiffs or any other Class Members do not know or suspect to exist in their favor at the time of the release of the Defendants and the Released Persons including, without limitation, claims that, if known by them, might have affected their decisions to settle with and release the Defendants and the Released Persons, or might have affected their decisions whether to object to this Settlement.

**2        THE SETTLEMENT FUND**

2.1        The Settlement Fund shall consist of ten million five hundred thousand dollars ($10,500,000.00) (the "Settlement Amount"), which the Defendants shall cause to be paid by their insurer, by wire transfer or similar means, into the Escrow Account maintained by the Escrow Agent within five (5) business days after the Execution Date, together with all interest or other income earned on the Settlement Amount or any portion thereof.   No portion of the Settlement Amount shall be paid by EV Classic or Prime Rate.

**3        ADMINISTRATION OF THE SETTLEMENT FUND**

**a.        The Escrow Agent**

3.1        The Escrow Agent shall invest the Settlement Fund in instruments backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof and shall reinvest the proceeds of these instruments as they mature in similar instruments at the then-current market rates, except that any residual cash balances and cash pending investment in United States Treasury Bills may be invested and reinvested in a money market mutual fund comprised exclusively of investments secured by the full faith and credit of the United States.   Neither Defendants nor Defendants' Counsel shall have any responsibility or liability for investment decisions.

3.2     The Escrow Agent shall not use or disburse all or any part of the Settlement Fund except as provided for in the Stipulation, or by an order of the Court, or with the written agreement of Defendants' Counsel and Lead Counsel.

3.3     The Escrow Agent is authorized to execute such transactions on behalf of the Class Members as are consistent with the terms of the Stipulation.

3.4     All funds held by the Escrow Agent shall be deemed and considered to be in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to the Stipulation, the Plan of Allocation, and/or further order(s) of the Court.

3.5     Following the Execution Date, the Eaton Vance Defendants, other than EV Classic or Prime Rate, shall be responsible for the payment of up to $200,000.00 in Notice and Administration Expenses and shall pay such amounts promptly upon and subject to presentment of documentation evidencing such expenses.  Also, following the funding of the Escrow Account, Lead Counsel may seek approval from the Parties or the Court to pay Notice and Administration Expenses in excess of $200,000.00 out of funds in the Escrow Account.  On or after the Final Settlement Date, Lead Counsel, without further approval of Defendants or the Court, may cause to be paid out of the Escrow Account any Notice and Administration Expenses in excess of $200,000.00.

3.6     Except as permitted by Sections 3.5, 3.7, and 8.2, Lead Counsel and the Escrow Agent shall not disburse any portion of the Settlement Fund prior to the Final Settlement Date.  Upon request by Defendants' Counsel, Lead Counsel and the Escrow Agent shall promptly provide to Defendants' Counsel all information reasonably requested by Defendants'

Counsel in connection with any disbursement(s) from the Settlement Fund made prior to the Final Settlement Date.

       **b.**      **Taxes and Tax Expenses**

3.7      (a)      The Parties and the Escrow Agent agree to treat the Settlement Fund as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1.  In addition, Lead Counsel shall timely make, or cause to be made, such elections as necessary or advisable to carry out the provisions of this Section 3.7, including the "relation-back election" (as defined in Treas. Reg. § 1.468B-1) back to the earliest permitted date.  Such election shall be made in compliance with the procedures and requirements contained in such regulations.  It shall be the responsibility of Lead Counsel to timely and properly prepare and deliver, or cause to be prepared and delivered, the necessary documentation for signature by all necessary parties, and thereafter take all such actions as may be necessary or appropriate to cause the appropriate filing to occur.

      (b)      For the purposes of Section 468B of the Internal Revenue Code of 1986, as amended, and Treas. Reg. § 1.468B promulgated thereunder, the "administrator" shall be Klafter & Olsen LLP or its successor, which shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including without limitation the returns described in Treas. Reg. § 1.468B-2(k)).  Such returns (as well as the election described in Section 3.7(a)) shall be consistent with this Section 3.7 and in all events shall reflect that all taxes (including any estimated taxes, interest, or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in Section 3.7(c) hereof.

      (c)      All (i) taxes (including any estimated taxes, interest, or penalties) arising with respect to the income earned by the Settlement Fund ("Taxes"); and (ii) expenses

and costs incurred in connection with the operation and implementation of this Section 3.7 (including, without limitation, expenses of tax attorneys and/or accountants, mailing and distribution costs, and expenses relating to filing (or failing to file) the returns described in this Section 3.7) ("Tax Expenses"), shall be paid out of the Settlement Fund; in all events the Released Persons shall have no liability or responsibility for the Taxes, the Tax Expenses, or the filing of any tax returns or other documents with the Internal Revenue Service or any other state or local taxing authority.  Any Taxes and Tax Expenses owed by any Defendant or Released Person (including, without limitation, any related expenses of tax attorneys and/or accountants) shall also be paid out of the Settlement Fund.  Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court, and the Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Claimants any funds necessary to pay such amounts (as well as any amounts that may be required to be withheld under Treas. Reg. § 1.468B-2(1)(2)); the Released Persons are not responsible and shall have no liability therefor, or for any reporting requirements that may relate thereto.  The Parties hereto agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Section 3.7.

## 4      PRELIMINARY APPROVAL HEARING AND ORDER

4.1             Promptly upon execution of this Settlement Agreement, the Parties shall submit the Settlement Agreement together with its Exhibits to the Court and shall apply for entry of an order ("Preliminary Approval Order"), substantially in the form attached hereto as Exhibit A:

      (a)                    preliminarily approving the Settlement;

(b)                              scheduling a Fairness Hearing to be held before the Court, at a time and date to be set by the Court, as set forth in the Notice, in order finally to determine (or to direct the later determination without further notice of) the reasonableness, adequacy, and fairness of the Settlement, to determine whether the Final Judgment should be entered pursuant to this Stipulation, and to consider (or to direct the later consideration without further notice of) the Plan of Allocation, the application of Lead Counsel for a Fee and Expense Award;

(c)                              appointing a Claims Administrator;

(d)                              approving and directing the Claims Administrator, with the supervision of Lead Counsel as the circumstances may require, to mail or cause to be mailed to all potential Class Members that can be identified with reasonable effort:

(i)      copies of the Notice, substantially in the form annexed hereto as Exhibit 1 to Exhibit A; and

(ii)      copies of the Claim Information Form, substantially in the form annexed hereto as Exhibit 2 to Exhibit A

(e)                              approving and directing the Claims Administrator to mail or cause to be mailed to all persons who previously submitted timely, valid written requests for exclusion, in response to the Notice of Pendency, copies of the Notice and of the Special Notice, substantially in the forms annexed hereto as Exhibits 1 and 4 to Exhibit A;

(f)                              approving, and directing the Claims Administrator to cause to be published once in the national edition of *Investor's Business Daily* and once on the *PR Newswire*, a Summary Notice substantially in the form annexed hereto as Exhibit 3 to Exhibit A;

(g)          finding that it is not necessary to provide Class Members with a new opportunity to request exclusion from the Class, who had an earlier opportunity to request exclusion but did not do so, pursuant to Federal Rule of Civil Procedure 23(e)(3);

(h)          requiring each Class Member who wishes to withdraw his, her, or its previous request for exclusion from the Class to do so in compliance with Section 6.3 of the Settlement Agreement by completing and returning a properly completed Request for Revocation of Exclusion from the Class, substantially in the form annexed hereto as part of Exhibit 4 to Exhibit A;

(i)          requiring any Class Member who objects to the approval of this Settlement, the Plan of Allocation, the application for a Fee and Expense Award, to file and serve, in the manner and time provided in the Notice, notice of the Class Member's intention to object, the grounds for such objection, and all papers the Class Member intends to present to the Court in opposition to this Settlement, and providing that any Class Member who does not follow the objection procedure in the Notice will be barred from making an objection or participating in the Fairness Hearing;

(j)          setting a period of time during which Class Members must file Claim Information Forms in order to participate in the distribution of the Net Settlement Fund;

(k)          determining, pursuant to Rule 23(c)(2) of the Federal Rules of Civil Procedure, that the giving of notice as provided herein meets the requirements of applicable law and due process, constitutes the best notice practicable under the circumstances to all persons entitled thereto, and constitutes due and sufficient notice of the Fairness Hearing and the rights of persons and entities in the Class with respect thereto; and

(l)                        pending the Court's entry of the Final Judgment, enjoining Plaintiffs and all Class Members from (a) instituting, commencing or prosecuting any action against the Defendants or Released Persons that asserts any of the Released Claims or (b) noticing or pursuing any appeal of any order or ruling of the Court in this Action entered prior to the Execution Date of this Stipulation, including, but not limited to, the Court's class certification decisions.

**5       ADMINISTRATION AND CALCULATION OF CLAIMS, FINAL AWARDS, AND SUPERVISION AND DISTRIBUTION OF THE SETTLEMENT FUND**

5.1         The Claims Administrator, acting on behalf of the Class, and subject to such supervision and direction of the Court or Lead Counsel as may be necessary or as the circumstances may require, shall administer and calculate the claims submitted by Class Members and shall oversee distribution of the Net Settlement Fund to Authorized Claimants. Defendants and Defendants' Counsel shall have no role in or responsibility for the administration of the Settlement or for the solicitation, review or evaluation of Claim Information Forms nor any liability therefor, and shall have no liability to any Person, including, without limitation, the Class or Lead Counsel, in connection with such matters.

5.2         The Settlement Fund shall be applied as follows:

(a)               to pay any Notice and Administration Expenses in excess of $200,000.00;

(b)               to pay any Taxes and Tax Expenses;

(c)               to pay any Fee and Expense Award; and

(d)               to distribute the Net Settlement Fund to Authorized Claimants as allowed by the Stipulation, the Plan of Allocation, or the Court.

5.3        Except as expressly stated in this Stipulation, all payments of Notice and Administration Expenses, Taxes, Tax Expenses, any other fees or costs of the Claims Administrator, any other cost of administering the Settlement Fund and any portion of the Fee and Expense Award shall be paid by the Settlement Fund and not by Plaintiffs, Plaintiffs' Counsel, members of the Class, the Defendants, Defendants' insurer or Defendants' Counsel. Except as expressly stated in this Stipulation, there shall be no liability on the part of Plaintiffs, Plaintiffs' Counsel, members of the Class, the Defendants, Defendants' insurer or Defendants' Counsel for Notice and Administration Expenses, Taxes, Tax Expenses, any other fees or costs of the Claims Administrator, any other cost of administering the Settlement Fund and any portion of the Fee and Expense Award.

5.4        Following the Final Settlement Date, in accordance with the terms of this Stipulation, the Plan of Allocation, or such further approval and further order(s) of the Court as may be necessary or as circumstances may require, the Net Settlement Fund shall be distributed to Authorized Claimants, subject to and in accordance with the following:

(a)        Each Class Member who wishes to participate in the Net Settlement Fund must return a signed Claim Information Form by first-class mail, postmarked no later than ninety (90) days after the mailing of the Notice or such other time as may be set by the Court.  The date will be set forth in the Notice.  A sample Claim Information Form proposed by the Parties is annexed hereto as Exhibit 2 to Exhibit A.   The address to which the Claim Information Form must be mailed shall be set forth on the Claim Information Form itself and shall also be printed in the Notice.  If a Class Member chooses to return his, her, or its Claim Information Form in a manner other than by first-class mail, then it must be actually received at

the address on the Claim Information Form by the date set forth in the Notice, unless that date is extended by order of the Court.

(b)	The Claim Information Form must be sworn on oath or made subject to the penalties of perjury pursuant to 28 U.S.C. § 1746.

(c)	In accordance with procedures set forth in the Notice and the Claim Information Form, Class Members will have the opportunity to object to the share transaction information set forth on the Claim Information Form by submitting to the Claims Administrator appropriate documentation that corrects or modifies such share transaction information.

(d)	The validity of each claim submitted will be initially determined by the Claims Administrator, acting under Lead Counsel's supervision as necessary, in accordance with the Plan of Allocation approved by the Court.  The Claims Administrator shall promptly advise the Class Member in writing if it rejects the claim.  Lead Counsel, the Claims Administrator, Defendants and Defendants' Counsel shall not have any liability arising out of said determination.  In the event a Class Member disagrees with such determination, the dispute shall be submitted to the Court for summary resolution.  Each Class Member shall be deemed to have submitted to the jurisdiction of the Court with respect to that Class Member's claim to the settlement.

(e)	All initial determinations as to the validity of a Claim Information Form, the calculation of the extent to which each Authorized Claimant will participate in the Net Settlement Fund, the preparation and mailing of distributions to Authorized Claimants, and the distribution of the Net Settlement Fund shall be performed by the Claims Administrator subject, as circumstances may require, to supervision by Lead Counsel or such

other persons or entities as Lead Counsel may, in their sole discretion, deem necessary or advisable to assist them in the administration of this Settlement Agreement.  All proceedings with respect to the administration of the Settlement Fund and Net Settlement Fund, and administration, processing and determination of claims described in this Stipulation, and the determination of all controversies related thereto, including disputed questions of law and fact with respect to the validity of any Claim Information Form or regarding rejection of claims, shall remain under the jurisdiction of the Court and shall be governed by, and construed in accordance with, the laws of the Commonwealth of Massachusetts without regard to conflicts-of-laws principles.  Lead Plaintiffs and Defendants expressly waive trial by jury (to the extent such right may exist) with respect to such determinations.

(f)             Except as otherwise ordered by the Court, any Class Member who fails to return a timely and signed Claim Information Form consistent with the procedures set forth in this Section shall be barred from receiving a distribution from the Net Settlement Fund, but shall nevertheless be bound by and subject to this Stipulation, the Final Judgment, and all proceedings, rulings, orders, and judgments in this Action, including, without limitation, the release of the Released Claims and the dismissal with prejudice of this Action. Notwithstanding the foregoing, Lead Counsel may, in their sole discretion, accept for processing late claims so long as the distribution of the Net Settlement Fund to Authorized Claimants is not materially delayed.

(g)             The Net Settlement Fund shall be distributed to the Authorized Claimants substantially in accordance with a Plan of Allocation to be described in the Notice mailed to Class Members and approved by the Court.  The Defendants shall have neither the right nor the duty to participate in the manner in which the Net Settlement Fund is distributed

to the Class. The Plan of Allocation shall not be a part of the Stipulation and any order or proceeding related to said Plan of Distribution shall not operate to terminate or cancel this Stipulation or affect the finality of the Court's Final Judgment approving this Stipulation and the Settlement it describes, or any other orders entered pursuant to this Stipulation.

(h)　　　　　This is not a claims-made settlement. As of the Final Settlement Date, the Defendants shall not have any right to the return of the Settlement Fund or any portion thereof irrespective of the number of Claim Information Forms that are filed, the collective amount of losses of Authorized Claimants, the percentage of recovery of losses, or the amounts to be paid to Authorized Claimants from the Net Settlement Fund. If there is any balance remaining in the Net Settlement Fund after six (6) months from the date of distribution of the Net Settlement Fund (whether by reason of tax refunds, uncashed checks, or otherwise), Lead Counsel shall reallocate such balance among Authorized Claimants in an equitable and economic fashion. Thereafter, any balance which still remains in the Net Settlement Fund shall be donated to an appropriate not-for-profit organization. Any orders or proceedings relating to the Plan of Allocation shall not operate to terminate or cancel this Stipulation, and shall have no effect on the Final Judgment becoming final.

5.5　　　　　No Person shall have any claim against Plaintiffs' Counsel or any Claims Administrator based on distributions, determinations, or claim rejections made substantially in accordance with the Settlement Agreement contained herein, the Plan of Allocation, or further orders of the Court. No Person shall have any claim against Defendants or Defendants' Counsel, based on any distributions, determinations, or claim rejections.

## 6  NO ADDITIONAL REQUESTS FOR EXCLUSION FROM THE CLASS

6.1        Any potential Class Member who did not previously submit a valid and timely written request for exclusion from the Class in response to the Notice of Pendency, and who now wishes to be excluded from the Class, will not be permitted to request exclusion from the Class pursuant to Federal Rule of Civil Procedure 23(e)(3).

6.2        Any potential Class Member who did not previously submit a valid and timely written request for exclusion from the Class in response to the Notice of Pendency shall be bound by this Stipulation, including the Releases defined in Section 7, and all proceedings, rulings, orders, and judgments in this Action.

6.3        Any potential Class Member who previously submitted a timely, valid written request for exclusion in response to the Notice of Pendency and who now wishes to withdraw his, her, or its request for exclusion and rejoin the Class, pursuant to the Special Notice, must mail by first-class mail or deliver a completed Request for Revocation of Exclusion from the Class to the Claims Administrator, at the address provided in the Special Notice,  which is postmarked or delivered no later than twenty-one (21) days before the Fairness Hearing, or as the Court may otherwise direct.  Any potential Class Member who timely and validly withdraws his, her, or its request for exclusion shall be a Class Member and shall be bound by all of the terms and provisions of the Settlement Agreement, including the Releases defined in Section 7 hereof, and by all proceedings, rulings, orders, and judgments in this Action, whether favorable or unfavorable to the Class.

6.4        None of the Parties may cancel or terminate the Settlement Agreement because of any order or proceedings by the Court or any appellate court rejecting or modifying Section 6.1.

**7        RELEASES**

7.1             Upon the Final Settlement Date, each and every Plaintiff and Class Member, and any of their heirs, executors, administrators, successors or assigns, shall be deemed to have, and by operation of the Final Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims (including Unknown Claims) against each and all of the Released Persons, whether or not such Class Member submits a timely and valid Claim Information Form, and the Action shall be dismissed with prejudice.

7.2             Upon the Final Settlement Date, each of the Released Persons shall be deemed to have, and by operation of the Final Judgment shall have, fully, finally, and forever released, relinquished, and discharged each and all of the Class Members, the Plaintiffs, and Plaintiffs' Counsel from all claims (including Unknown Claims) arising out of, relating to, or in connection with the institution, prosecution, assertion, settlement, or resolution of the Action or the Released Claims.

7.3             Unless otherwise provided for herein, or unless the Court orders otherwise, only those Class Members filing valid and timely Claim Information Forms shall be entitled to receive a distribution from the Settlement Fund.  All Class Members shall be bound by the releases set forth in this section whether or not they submit a valid and timely Claim Information Form.

7.4             With respect to any and all Unknown Claims and Released Claims against the Defendants and the Released Persons, the Parties stipulate and agree that, upon the Final Settlement Date, the Plaintiffs shall knowingly, voluntarily, intentionally and expressly waive and relinquish, and each of the other Class Members shall be deemed to have, and by operation of the Final Judgment shall have, knowingly, voluntarily, intentionally and expressly waived and

relinquished, to the fullest extent permitted by law, the provisions, rights and benefits conferred by § 1542 of the California Civil Code, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

The Plaintiffs shall also knowingly, voluntarily, intentionally and expressly waive and relinquish, and each of the other Class Members shall be deemed to have, and by operation of the Final Judgment shall have, knowingly, voluntarily, intentionally and expressly waived any and all provisions, rights and benefits conferred by law of any state or territory of the United States, or principle of common law, or of international or foreign law, which is similar, comparable or equivalent to § 1542 of the California Civil Code.  The Plaintiffs and the other Class Members may hereafter discover facts in addition to or different from those which they now know or believe to be true with respect to the Unknown Claims and Released Claims, but hereby stipulate and agree that upon the Final Settlement Date, the Plaintiffs fully, finally, and forever settle and release, and each other Class Member shall be deemed to have, and by operation of the Final Judgment shall have, fully, finally and forever settled and released any and all Unknown Claims and Released Claims against the Defendants and the Released Persons, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law, or rule, without regard to subsequent discovery or existence of such different or additional facts.  The Parties acknowledge that the foregoing waiver was bargained for and a key element of the Settlement of which the release in this subsection is a part.

7.5          The Plaintiffs and the other Class Members further covenant that they will refrain from commencing any action, suit, arbitration or administrative proceeding, or prosecuting any pending action, suit, arbitration or administrative proceeding, in law or in equity, related to the Released Claims against the Released Persons.   In the event that any Plaintiff or Class Member commences or continues any such action, suit, arbitration or administrative proceeding, any Released Person shall be entitled to seek an order from the Court enjoining the continuation of such action, suit, arbitration or administrative proceeding.   Lead Counsel and Defendants' Counsel agree to use their good faith efforts to obtain the dismissal or stay in contemplation of dismissal of any action referred to or described above.

7.6          The Plaintiffs and the other Class Members further covenant that they will refrain from noticing or pursuing any appeal from any order or ruling of the Court in this Action entered prior to the Execution Date of this Stipulation, including, but not limited to, the Court's class certification decisions.   Lead Counsel and Defendants' Counsel agree to use their good faith efforts to obtain the dismissal or withdrawal of any such appeal.

7.7          This Stipulation may be pleaded as a full and complete defense to any action, suit, arbitration or administrative proceeding instituted, prosecuted or attempted against any Released Person with respect to any of the Released Claims.  The Plaintiffs, Class Members and Defendants agree that any such proceeding would cause irreparable injury to the Party against which it is brought and that the Court or any court of competent jurisdiction may enter an injunction restraining prosecution of such proceeding.

## 8          FEE AND EXPENSE AWARD

8.1          Lead Counsel may submit an application for a Fee and Expense Award to be distributed from the Settlement Fund.  Such application must be submitted in such a manner that it may be heard at the Fairness Hearing, and must be consistent with the description in the

Notice of the fees and expenses that would be sought.  Lead Counsel may make additional applications for reimbursement of expenses (including Notice and Administration Expenses) incurred subsequent to their initial application for a Fee and Expense Award.

8.2         Any Fee and Expense Award shall become payable to Lead Counsel, on behalf of all Plaintiffs' Counsel, or payable to any Lead Plaintiff pursuant to 15 U.S.C. § 77z-1(a)(4), from the Settlement Fund immediately after entry of both the Final Judgment and the Fee and Expense Award.  Lead Counsel shall thereafter allocate the Fee and Expense Award payable to Lead Counsel among all Plaintiffs' Counsel in a manner that, in Lead Counsel's good-faith judgment, reflects such counsel's contribution to the institution, prosecution, or resolution of the Action.  If the Final Judgment is reversed or modified on appeal, if the Final Settlement Date does not occur, or if the Settlement Agreement is terminated pursuant to Section 10.2 or Section 10.4 of this Stipulation, then any Fee and Expense Award is no longer payable.  And in the event that any portion of the Fee and Expense Award had been paid from the Settlement Fund, Lead Counsel and Lead Plaintiffs shall, within five (5) business days from the reversal or modification of the Final Judgment, the event which precludes the Final Settlement Date from occurring, or the termination of the Settlement Agreement pursuant to Section 10.2 or Section 10.4, as applicable, refund to the Settlement Fund the Fee and Expense Award paid to Lead Counsel and Lead Plaintiffs, respectively, and in addition shall pay into the Settlement Fund interest on the amount refunded at the average rate earned on the Settlement Fund from the time of payment until the date of refund.  As a condition of receiving any Fee and Expense Award, Lead Counsel, on behalf of themselves and each of their partners, agree that their law firms and their partners are subject to the jurisdiction of the Court for the purpose of enforcing this Section 8.2 of this Stipulation.  Lead Counsel, and each of them, expressly agree that they will be jointly

and severally liable for refunding the Fee and Expense Award.  Without limitation, Lead Counsel and its partners agree that the Court may, upon application of Defendants or Defendants' Counsel and upon notice to Lead Counsel, summarily issue orders, including, but not limited to, judgments and attachment orders, and may make appropriate findings of or sanctions for contempt, against them or any of them should such Lead Counsel fail timely to refund any Fee and Expense Award and pay interest pursuant to this Section 8.2.

8.3        Defendants and the Released Persons shall have no responsibility for, and no liability whatsoever with respect to, any payment to Lead Counsel or any other Person who receives payment from the Settlement Fund.

8.4        Defendants and the Released Persons shall have no responsibility for, and no liability whatsoever with respect to, any Fee and Expense Award that the Court may make. The Defendants and the Released Persons shall have no authority or responsibility for, or liability whatsoever with respect to, the allocation of any Fee and Expense Award by Lead Counsel and/or any other claim that any Person may assert as to any Fee and Expense Award.

8.5        The procedures for and the allowance or disallowance by the Court of an application for a Fee and Expense Award to be paid out of the Settlement Fund are not part of the Settlement set forth in this Stipulation and are to be considered by the Court at the Fairness Hearing, but separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in this Stipulation.  None of the Parties may terminate or cancel the Settlement Agreement on the basis of the amount of any Fee and Expense Award. Any order or proceedings related to any application for a Fee and Expense Award by Lead Counsel or any appeal from any order relating to such a Fee and Expense Award or any reversal

or modification thereof shall not modify, terminate or cancel this Stipulation or affect or delay the finality of the Final Judgment approving the Stipulation and the Settlement of the Action.

## 9    FINAL JUDGMENT AND ORDER OF DISMISSAL WITH PREJUDICE

9.1        Upon the Court's approval of this Settlement Agreement, a Final Judgment, substantially similar in all material respects to that annexed as Exhibit B hereto shall be entered, which shall, among other things:

(a)                    find that the Court has personal jurisdiction over all Class Members and that the Court has subject matter jurisdiction to approve this Settlement Agreement and all exhibits thereto;

(b)                    approve the Settlement as (i) fair, reasonable, and adequate, (ii) consistent and in compliance with all applicable requirements of the Federal Rules of Civil Procedure, the PSLRA, the rules of the Court, and any other applicable law, and (iii) in the best interests of all Class Members;

(c)                    direct the Parties and their counsel to implement and consummate this Settlement Agreement according to its terms and provisions;

(d)                    declare this Settlement Agreement to be binding, as to the Released Claims, on Plaintiffs and all other Class Members, as well as their heirs, executors, administrators, successors, and assigns;

(e)                    find that the Notice, the Special Notice, the Summary Notice and the notice methodology implemented pursuant to this Settlement Agreement:  (i) constituted the best practicable notice; (ii) constituted notice that was reasonably calculated, under the circumstances, to apprise Class Members of their right to object to the proposed Settlement and their right to appear at the Fairness Hearing; (iii) were reasonable and constituted

due, adequate, and sufficient notice to all persons entitled to receive notice; and (iv) met all applicable requirements of the Federal Rules of Civil Procedure, the PSLRA, the rules of the Court, and any other applicable law;

(f)              direct the Eaton Vance Defendants, other than EV Classic or Prime Rate, to pay Plaintiff Macy the sum of seven thousand seven hundred forty-five dollars ($7,745.00) as a full and complete settlement and disposition of the claims released by Macy in Section 9.1(g) below;

(g)              grant a release (i) by Macy of all Released Claims and all other claims, whether known or unknown, which have been or could have been asserted by him against any of the Defendants or the Released Persons, whether under state, federal, common, foreign or administrative law, arising out of, based upon, or related in any way to his purchase of shares in Prime Rate prior to and including March 5, 2001 and the facts, transactions, events, occurrences, acts, disclosures, statements, omissions, or failures to act which were or could have been alleged in the Action; and (ii) by each Defendant to Macy of all claims, whether known or unknown, arising out of, relating to, or in connection with the institution, prosecution, assertion, settlement, or resolution of the Action, Macy's claims, or the Released Claims;

(h)              find that Lead Counsel and the Lead Plaintiffs adequately represented the Class consistent with Rules 23(a)(4) and 23(g) of the Federal Rules of Civil Procedure for purposes of entering into and implementing the Settlement;

(i)              find that during the course of the Action, the Parties and their respective counsel at all times complied with the requirements of Rule 11 of the Federal Rules of Civil Procedure;

(j)        dismiss the Action on the merits and with prejudice, and without fees or costs to any Party except as provided in this Settlement Agreement;

(k)        completely discharge, settle, dismiss with prejudice, release, and permanently bar and enjoin the assertion, prosecution, or continuation by any Plaintiff or any Class Member (and any of their heirs, executors, administrators, successors or assigns) of any Released Claim, including any Unknown Claim, either directly or indirectly, representatively, derivatively or in any other capacity, against each and every Released Person; provided, however, that the Final Judgment shall not bar any action or claim to enforce the terms of the Settlement as approved by the Court or the Final Judgment; and

(l)        without affecting the finality of the Final Judgment for purposes of appeal, retain jurisdiction as to any award of attorneys' fees and expenses to Lead Counsel on behalf of Plaintiffs' Counsel, any award of costs and expenses to one or more of the Lead Plaintiffs, all matters relating to the administration, consummation, enforcement, and interpretation of this Settlement Agreement and the Final Judgment, and for any other necessary purpose.

## 10      CONDITIONS OF SETTLEMENT, EFFECT OF DISAPPROVAL, CANCELLATION OR TERMINATION

10.1        The terms and provisions of this Settlement Agreement may only be amended, modified, or expanded by written agreement of the Parties and approval of the Court; provided, however, that after entry of the Final Judgment, the Parties may by written agreement effect such amendments, modifications or expansions of this Settlement Agreement and its implementing documents (including all exhibits to the Settlement Agreement) without notice to or approval by the Court only if such changes are not materially inconsistent with the Court's Final Judgment and do not (i) materially limit the rights of Class Members under the Settlement

Agreement; or (ii) materially limit the rights of the Released Persons under the Settlement Agreement.

10.2      This Settlement Agreement will terminate at the sole option and discretion of Lead Plaintiffs or Defendants if (i) the Court or any appellate court rejects, modifies, or denies approval of any portion of this Settlement Agreement or the proposed Settlement that the terminating Party reasonably and in good faith determines is material, including, without limitation, the terms of relief, the findings of the Court, the provisions relating to Notice, and/or the terms of the Releases; (ii) the Court or any appellate court does not enter or completely affirm, or modifies or expands, any portion of the Preliminary Approval Order or Final Judgment that the terminating Party reasonably and in good faith believes is material; or (iii) any Person notices or pursues any appeal of any order or ruling by the Court in this Action entered prior to the Execution Date of this Stipulation, including, but not limited to, the Court's class certification decisions; provided, however, that the option to terminate under this Section 10.2 is subject to, and limited by, Section 10.5.   The terminating Party must exercise the option to withdraw from and terminate this Settlement Agreement as provided in this Section 10.2 by providing written notice of said termination to all other Parties hereto no later than twenty (20) days after receiving actual notice of the event prompting the termination.

10.3      Upon the Final Settlement Date, any and all remaining interest or right of Defendants in or to the Settlement Fund, if any, shall be absolutely and forever extinguished.

10.4      If, contrary to Section 6.1, Class Members are given an additional opportunity to request exclusion from the Class, no later than seven (7) days before the Fairness Hearing, Defendants may unilaterally withdraw from and terminate this Settlement Agreement if valid and timely requests for exclusion are received from Class Members who, in the aggregate,

purchased an amount greater than five percent (5%) of the aggregate number of affected shares of EV Classic purchased by all Class Members during the Class Period.  Requests for exclusion that were not timely submitted, that were timely and validly withdrawn, or that failed to provide all of the information required by this Settlement Agreement shall not be counted.  Solely for purposes of this Section 10.4, the Parties stipulate that the aggregate number of affected shares of EV Classic purchased by all Class Members during the Class Period equals 400 million shares. If, contrary to Section 6.1, Class Members are given an additional opportunity to request exclusion from the Class, Lead Counsel shall provide to Defendants' Counsel, no later than seven (7) days following the deadline for making such requests (but in no event less than ten (10) days prior to the Fairness Hearing), the aggregate number of shares purchased during the Class Period by Class Members who submit new valid and timely requests for exclusion.

10.5     Neither a modification nor a reversal by the Court or any appellate court of any Plan of Allocation or of any Fee and Expense Award shall constitute grounds for cancellation or termination of this Stipulation.

10.6     If an option to withdraw from and terminate this Settlement Agreement arises under Section 10.2 or Section 10.4 of this Stipulation, (i) neither Defendants nor Lead Plaintiffs will be required for any reason or under any circumstance to exercise that option; and (ii) any exercise of that option shall be made in good faith, but in the sole and unfettered discretion of the Defendants or Lead Plaintiffs, respectively.

10.7     In addition to all of the rights and remedies that Lead Plaintiffs and Lead Counsel have under the terms of this Stipulation,  Lead Plaintiffs shall also have the right to terminate the Settlement in the event that neither Defendants' insurer, ICI Mutual Insurance Company, nor Defendants (other than EV Classic or Prime Rate) timely and fully pay the

Settlement Amount as provided in Section 2.1 above, by providing written notice of their election to do so to all other Parties to this Stipulation no later than ten (10) days after such failure.

10.8     If the Final Settlement Date does not occur, or if the Settlement Agreement is terminated pursuant to Section 10.2, Section 10.4 or Section 10.7 of this Stipulation, then:

(a)     this Settlement Agreement shall be null and void and shall have no force or effect, and no Party to this Settlement Agreement shall be bound by any of its terms, except for the terms of this Section 10.7 and Sections 8.2 and 11.5;

(b)     this Settlement Agreement, all of its provisions, and all negotiations, statements, documents and proceedings relating to it shall be without prejudice to the rights of Defendants, Plaintiffs, or any other Class Member, all of whom shall be restored to their respective positions vis-à-vis each other as they existed immediately before the execution of this Settlement Agreement;

(c)     the Released Persons expressly and affirmatively reserve all defenses, arguments, and motions as to all claims that have been or might later be asserted in the Action;

(d)     Plaintiffs and their current and former predecessors, successors, heirs, agents, attorneys, representatives, and assigns, individually and on behalf of the Class, expressly and affirmatively reserve all motions as to, and arguments in support of, all claims that have been or might later be asserted in the Action;

(e)     the Parties shall meet and confer and apply to the Court for a new trial date and dates for the filing of pre-trial submissions;

(f)                neither this Settlement Agreement, nor the fact of its having been made, nor any documents prepared and statements made in connection therewith shall be referred to, admissible in or introduced or entered into evidence in any other way for any purpose whatsoever in this Action or in any other action or proceeding;

(g)                Lead Counsel shall, within ten (10) days, authorize the Escrow Agent to immediately return to Defendants, in accordance with their instructions, the Settlement Amount (plus any interest accrued thereon) less a maximum of one hundred thousand dollars ($100,000) in Notice and Administration Expenses paid out of, or incurred by, the Settlement Fund, and less any Taxes and Tax Expenses paid out of, or incurred by, the Settlement Fund; and

(h)                any order or judgment entered after the date of this Settlement Agreement that relates to this Settlement Agreement shall be deemed vacated and will be without any force or effect.

## 11      GENERAL MATTERS

11.1          The Parties (i) acknowledge that it is their intent to consummate this Settlement; and (ii) agree to cooperate to the full extent necessary to effectuate and implement all terms and conditions of this Settlement Agreement and to exercise their best efforts to accomplish the foregoing terms and conditions of this Settlement Agreement.

11.2          The Parties intend this Stipulation to be a final and complete resolution of all disputes that have been asserted or that could have been asserted by the Plaintiffs and Class Members against the Released Persons with respect to the Released Claims or the Action. The Settlement compromises claims which are contested and shall not be deemed an admission by any Party as to the merits of any claim or defense. The Parties agree that the amount paid to the Settlement Fund and the other terms of the Settlement were negotiated in good faith and at arm's

length by the Parties, and reflect a settlement that was reached voluntarily after consultation with competent and experienced legal counsel.  The Parties and their counsel agree not to contend in any forum that the Action was brought or defended in bad faith or without a reasonable basis and reserve their right to rebut, in a manner that such Party determines to be appropriate, any contention made in any forum that the Action was brought or defended in bad faith or without a reasonable basis.

11.3     If a case is commenced under Title 11 of the United States Code (Bankruptcy) in respect of any insurer contributing funds to the Settlement Amount on behalf of any Defendant, or a trustee, receiver or conservator is appointed as to any such person or entity (or insurer) under any similar law, and in the event of the entry of a final order of a court of competent jurisdiction determining the transfer of money to the Settlement Fund or any portion thereof by such Defendant (or insurer) to be a preference, voidable transfer, fraudulent transfer or similar transaction and any portion thereof is required to be, and is capable of being, returned or disgorged by the Settlement Fund and is so returned or disgorged, and replacement funds are not promptly deposited into the Settlement Fund by Defendants other than EV Classic or Prime Rate, then, at the election of Lead Counsel, the Parties shall jointly move the Court to vacate and set aside the releases given and Final Judgment entered in favor of the Defendants pursuant to this Stipulation, which releases and Final Judgment shall be null and void, and the Parties shall be restored to their respective positions in the Action as of the day immediately prior to the execution of this Stipulation and any amounts in the Settlement Fund shall be returned as provided in Section 10.7.

11.4     By executing this Settlement Agreement, Defendants do not intend to, and do not, release any claim against any insurer for the amount paid into the Settlement Fund, or for

any costs or expenses, including attorneys' fees and costs Defendants have incurred in connection with this Action.

11.5          Neither this Settlement Agreement, whether or not it is consummated and whether or not it is terminated, nor any of its provisions, nor any negotiations, proceedings or agreements relating to the Settlement Agreement and the Settlement, nor any matter arising in connection with such negotiations, proceedings or agreements, nor any act performed or document executed pursuant to or in furtherance of this Settlement Agreement: (i) is or may in any event be deemed or construed to be or may be offered or received in evidence or used as or deemed to be an admission or evidence of a presumption, concession or admission by any Defendant of the truth of any fact alleged in the Complaint or the validity of any Released Claim or of any wrongdoing, liability, negligence or fault by any Defendant, or a presumption, concession or admission by any Plaintiff as to the infirmity of any fact alleged in the Complaint, viability of any Released Claim, or lack of wrongdoing, liability, negligence or fault by any Defendant; (ii) is or may be deemed to be or may be referred to or used as an admission or evidence of a presumption, concession or admission with respect to any fault or omission, or lack thereof, of the Defendants, or for any other reason, in any civil, criminal, arbitration or administrative action or proceeding in any court, arbitration, administrative agency or other tribunal, other than in such proceedings as may be necessary to consummate, effectuate or enforce any of the provisions of the Settlement Agreement, the Settlement or the Final Judgment; (iii) is or may be used as an admission or evidence that Lead Plaintiffs' claims in the Action did not have merit; (iv) is or may be used or construed against any Party as an admission or concession that the consideration to be given hereunder represents the amount that could be or would have been recovered by Plaintiffs after trial; (v) is or may be used or construed or received

in evidence as an admission, concession or presumption by Defendants that any damages were recoverable under the Complaint or by Lead Plaintiffs that the damages recoverable under the Complaint would not have exceeded the Settlement Fund.  Defendants may file this Settlement Agreement and/or the Final Judgment in any action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good-faith settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim.  Any Party may file this Settlement Agreement and/or the Final Judgment in any action that may be brought to enforce the terms of this Settlement Agreement and/or the Final Judgment.

11.6     All agreements made and orders entered during the course of this Action, including the Confidentiality Stipulation approved by the Court on May 27, 2003 (the "Confidentiality Stipulation"), relating to the confidentiality of documents, testimony or other information produced during pre-trial discovery in this Action ("Discovery Material") shall survive this Settlement Agreement.  All such Discovery Material that has been designated as "confidential" under said agreements or orders, including the Confidentiality Stipulation, and all copies thereof, shall be returned or destroyed in accordance with paragraph 13 of the Confidentiality Stipulation.  Counsel of record shall certify in writing within thirty (30) days after the Final Settlement Date that all such confidential Discovery Material has been destroyed or returned.  No such Discovery Material may be used, before or after the Final Settlement Date, in any other litigation or proceeding nor disclosed in response to a subpoena or discovery request, except as such disclosure is expressly permitted under the terms of paragraph 8 of the Confidentiality Stipulation.

11.7        All of the Exhibits to the Settlement Agreement are material and integral parts hereof and are fully incorporated herein by this reference.

11.8        The Settlement Agreement may not be amended or modified, nor may any of its provisions be waived, except by a written instrument signed by or on behalf of all Parties or their successors-in-interest.  The waiver by one Party of any breach of this Stipulation by any other Party shall not be deemed a waiver of any other prior or subsequent breach of this Stipulation.

11.9        The Settlement Agreement and the Exhibits attached hereto constitute the sole and entire agreement among the Parties, and no representations, warranties, inducements, promises or agreements, oral or otherwise, have been made by or to any Party concerning this Settlement Agreement or its Exhibits other than the representations, warranties, and covenants contained and memorialized in such documents.  Any and all prior discussions, negotiations, agreements, commitments, and understandings related thereto are superseded hereby and merged herein.  Except as otherwise provided herein, each Party shall bear his, her, or its own fees and costs.

11.10        Lead Counsel, on behalf of the Class, are expressly authorized by the Lead Plaintiffs to take all appropriate action required or permitted to be taken by the Class pursuant to the Settlement Agreement to effectuate its terms and also are expressly authorized to enter into any modifications or amendments to this Settlement Agreement on behalf of the Class which they deem appropriate.

11.11        Plaintiffs and Lead Counsel represent and warrant that they have not assigned, encumbered or in any manner transferred in whole or in part any of the Released Claims.

11.12        Each counsel or other Person executing the Settlement Agreement or any of its Exhibits, or any related settlement documents, on behalf of any Party hereby warrants and represents that such Person has the full authority to do so and that such Person has the authority to take appropriate action required or permitted to be taken pursuant to the Settlement Agreement to effectuate its terms.

11.13        This Settlement Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. Complete sets of original executed counterparts shall be filed with the Court and shall be exchanged among Lead Counsel and counsel for the Eaton Vance Defendants and the Independent Trustee Defendants.

11.14        The Settlement Agreement shall be binding upon, and inure to the benefit of, the heirs, executors, administrators, trustees, successors and assigns of the Parties, including any corporation, partnership or other entity into which any Party hereto may merge or consolidate.

11.15        The construction, interpretation, operation, effect and validity of this Settlement Agreement and any ancillary documents necessary to effectuate it, shall be governed by and interpreted according to the law of the Commonwealth of Massachusetts, excluding its conflict-of-law provisions, except to the extent that federal law requires that federal law governs. Any dispute relating to this Stipulation shall be brought exclusively in the United States District Court for the District of Massachusetts, and each of the Parties agrees not to contest subject matter jurisdiction or personal jurisdiction for any such dispute brought in this Court.  This is a mandatory forum selection clause.

11.16        The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of this Settlement Agreement, and the administration and consummation of the Settlement embodied therein.  All Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in this Settlement Agreement.

11.17        The Parties reserve the right, upon the agreement of all of them and subject to the Court's approval, to make any reasonable extensions of time or modifications to the Exhibits that might be necessary to carry out any of the provisions of this Settlement Agreement.

11.18        All Parties agree that this Settlement Agreement was drafted by counsel for the Parties in good faith and at arm's length, and that no parol or other evidence may be offered to explain, construe, contradict or clarify its terms, the intent of the Parties or their counsel, or the circumstances under which the Settlement Agreement was made or executed.  This Stipulation shall not be construed more strictly against one Party than another merely by virtue of the fact that it, or any part of it, may have been prepared or drafted by counsel for that Party.  It is recognized that this Stipulation was the result of arm's length negotiations between counsel for the Parties and that counsel for all Parties contributed substantially and materially to the preparation of this Stipulation.

11.19        This Stipulation shall be effective on its Execution Date, but the Settlement shall become effective only on the Final Settlement Date.

11.20        The captions contained in this Stipulation are inserted only as a matter of convenience and in no way define, limit, extend or describe the scope of this Stipulation or the intent of any provision hereof.

11.21    In the event any one or more of the material provisions contained in this Stipulation shall for any reason be held to be invalid, illegal, or unenforceable in any respect, this Stipulation shall not be binding on a Party without the consent of such Party to the change resulting from such finding or holding.

11.22    By making their application for approval of this Settlement, Lead Counsel and Defendants' Counsel shall not be deemed to have waived any attorney-client or work product privilege or immunity and all information and documents transmitted between Lead Counsel and Defendants' Counsel in connection with this Settlement shall be inadmissible in accordance with Federal Rule of Evidence 408.

11.23    Unless otherwise indicated, any notice or other communication that may or must be given by any Party or its counsel, or by the Claims Administrator, under this Stipulation shall be in writing and shall be delivered by fax and by prepaid overnight mail to counsel for the Party or Parties to which such notice or communication is directed at the fax number and address for such counsel set forth below.

Dated:    December 20, 2005

SHAPIRO HABER & URMY LLP

By:    _____
Thomas G. Shapiro (BBO #454680)
Theodore M. Hess-Mahan (BBO #557109)
Exchange Place
53 State Street
Boston, Massachusetts  02109
(617) 439-3939
(617) 439-0134 (fax)

*Liaison Counsel for Lead Plaintiffs
and the Class and Plaintiff Neil Macy*

KLAFTER & OLSEN LLP

By: _____

Jeffrey A. Klafter
1311 Mamaroneck Avenue, Suite 220
White Plains, New York  10605
(914) 997-5656
(914) 997-2444 (fax)

*Co-Lead Counsel for Lead Plaintiffs*
*and the Class and Plaintiff Neil Macy*

LABATON SUCHAROW & RUDOFF LLP

By: _____

Joel H. Bernstein
David J. Goldsmith
100 Park Avenue
New York, New York  10017-5563
(212) 907-0700
(212) 818-0477 (fax)

*Co-Lead Counsel for Lead*
*Plaintiffs and the Class*

LERACH COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP

By: _____

Paul J. Geller
Jack Reise
197 South Federal Highway, Suite 200
Boca Raton, Florida  33432
(561) 750-3000
(561) 750-3364 (fax)

*Co-Lead Counsel for Lead*
*Plaintiffs and the Class*

KLAFTER & OLSEN LLP

By:   _____

Jeffrey A. Klafter
1311 Mamaroneck Avenue, Suite 220
White Plains, New York 10605
(914) 997-5656
(914) 997-2444 (fax)

*Co-Lead Counsel for Lead Plaintiffs
and the Class and Plaintiff Neil Macy*

LABATON SUCHAROW & RUDOFF LLP

By:   _____

Joel H. Bernstein
David J. Goldsmith
100 Park Avenue
New York, New York 10017-5563
(212) 907-0700
(212) 818-0477 (fax)

*Co-Lead Counsel for Lead
Plaintiffs and the Class*

LERACH COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP

By:   _____

Paul J. Geller
Jack Reise
197 South Federal Highway, Suite 200
Boca Raton, Florida 33432
(561) 750-3000
(561) 750-3364 (fax)

*Co-Lead Counsel for Lead
Plaintiffs and the Class*

- 46 -

KLAFTER & OLSEN LLP

By:    _____

Jeffrey A. Klafter
1311 Mamaroneck Avenue, Suite 220
White Plains, New York  10605
(914) 997-5656
(914) 997-2444 (fax)

*Co-Lead Counsel for Lead Plaintiffs
and the Class and Plaintiff Neil Macy*

LABATON SUCHAROW & RUDOFF LLP

By:    _____

Joel H. Bernstein
David J. Goldsmith
100 Park Avenue
New York, New York  10017-5563
(212) 907-0700
(212) 818-0477 (fax)

*Co-Lead Counsel for Lead
Plaintiffs and the Class*

LERACH COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP

By:    _____

Paul J. Geller
Jack Reise
197 South Federal Highway, Suite 200
Boca Raton, Florida  33432
(561) 750-3000
(561) 750-3364 (fax)

*Co-Lead Counsel for Lead
Plaintiffs and the Class*

Dated:   December 20, 2005

KIRKPATRICK & LOCKHART NICHOLSON
GRAHAM LLP

By:   _____

Michael DeMarco (BBO #119960)
Aimée E. Bierman (BBO #640385)
75 State Street
Boston, Massachusetts  02109
(617) 261-3100
(617) 261-3175 (fax)

Charles Lee Eisen
Glenn R. Reichardt
Shanda N. Hastings
Kirkpatrick & Lockhart Nicholson
 Graham LLP
1800 Massachusetts Avenue, N.W.
Washington, D.C.  20036
(202) 778-9000
(202) 778-9100 (fax)

*Counsel for Defendants
Eaton Vance Corp.,
EV Classic Senior Floating-Rate Fund,
Eaton Vance Prime Rate Reserves,
Eaton Vance Management,
James B. Hawkes, James L. O'Connor,
Scott H. Page, Payson F. Swaffield and
M. Dozier Gardner*

GOODWIN PROCTER LLP

By:   _____

J. Anthony Downs (BBO #552839)
Stuart M. Glass (BBO #641466)
Exchange Place
Boston, Massachusetts  02109-2881
(617) 570-1000
(617) 523-1231 (fax)

*Counsel for Defendants
Jessica M. Bibliowicz, Donald R.
Dwight, Samuel L. Hayes, Norton H.
Reamer, Lynn A. Stout, John L.
Thorndike and Jack L. Treynor*

- 47 -

Dated:   December 20, 2005

KIRKPATRICK & LOCKHART NICHOLSON
GRAHAM LLP

By: _____

Michael DeMarco (BBO #119960)
Aimée E. Bierman (BBO #640385)
75 State Street
Boston, Massachusetts  02109
(617) 261-3100
(617) 261-3175 (fax)

Charles Lee Eisen
Glenn R. Reichardt
Shanda N. Hastings
Kirkpatrick & Lockhart Nicholson
  Graham LLP
1800 Massachusetts Avenue, N.W.
Washington, D.C.  20036
(202) 778-9000
(202) 778-9100 (fax)

*Counsel for Defendants
Eaton Vance Corp.,
EV Classic Senior Floating-Rate Fund,
Eaton Vance Prime Rate Reserves,
Eaton Vance Management,
James B. Hawkes, James L. O'Connor,
Scott H. Page, Payson F. Swaffield and
M. Dozier Gardner*

GOODWIN PROCTER LLP

By: _____

J. Anthony Downs (BBO #552839)
Stuart M. Glass (BBO #641466)
Exchange Place
Boston, Massachusetts  02109-2881
(617) 570-1000
(617) 523-1231 (fax)

*Counsel for Defendants
Jessica M. Bibliowicz, Donald R.
Dwight, Samuel L. Hayes, Norton H.
Reamer, Lynn A. Stout, John L.
Thorndike and Jack L. Treynor*